#### IN THE UNITED STATES DISTRICT COURT FOR THE
#### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CR-06-00245-001-HE |
| | ) | NO. CIV-12-0441-HE |
| ANDREW POLLY, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

Defendant Andrew Polly pleaded guilty to three counts of drug related charges and was sentenced to 327 months imprisonment on each count, to run concurrently. He appealed, challenging the court's ruling on his motions to suppress and his sentence and claiming ineffective assistance of counsel in conjunction with his suppression motions. The Tenth Circuit affirmed defendant's conviction and sentence, but dismissed without prejudice his ineffective assistance of counsel claim.

Defendant then filed a motion to vacate, correct or set aside his sentence under 28 U.S.C. § 2255. In support of the requested habeas relief, defendant contends that he was denied effective assistance of counsel by both his retained and appointed attorneys in conjunction with his suppression motions and that the performance of appellate counsel also was constitutionally deficient.

### BACKGROUND

The facts underlying defendant's convictions are found both in the court's order denying defendant's motions to suppress [Doc. #29] and the Tenth Circuit's decision affirming defendant's conviction and sentence. United States v. Polly, 630 F.3d 991 (10th

Cir. 2011). On March 14, 2006, the Oklahoma City Police Department was investigating a vehicle repair garage for drug-trafficking activity. Several patrol cars were parked next to the garage and an undercover officer, Jimmy Cortez, was conducting surveillance in an unmarked vehicle. He observed a pickup truck start to turn left into a driveway leading to the garage but then cross back into its lane and continue down the street (Jordan). Cortez recognized Polly as the driver and was aware that officers had previously conducted a controlled drug buy with him and suspected he was involved in drug distribution with the garage owner. Cortez followed Polly and observed him speeding in a residential area. He radioed for a marked police car to stop Polly and Officer Blosser pulled Polly over and asked for his driver's license and proof of insurance.

Cortez, who had parked behind Blosser, approached defendant's truck and asked him if he would step out of his vehicle, which he did. Cortez then asked Polly if he had any guns, drugs, or other illegal objects on his person and Polly said he did not. When asked the same question with respect to his vehicle, Polly responded that he did not see any reason to search his vehicle. Cortez then asked Polly if Blosser could search him so he could be put in Blosser's car while Cortez issued him traffic citations for speeding and for crossing over the center lane line. According to Cortez, Polly stated,"I don't mind." Blosser then patted down Polly and felt a fairly large round object in his right front pants pocket. Polly denied knowing what it was and Blosser removed what appeared to be individual packages of crack cocaine. Polly was then arrested. Cortez became concerned about officer safety because area residents began to appear and question the officers about the traffic stop. He radioed

for other officers (a two man unit), who came and moved defendant's truck to the Springlake police station. The vehicle was searched there and officers found a receipt for a U–Haul storage unit, a set of keys, including a key for a U–Haul lock, digital scales, razor blades, latex gloves, and a shaving bag containing crack cocaine and cocaine powder. Officers obtained a search warrant for the storage unit, where they discovered cocaine powder.

Polly testified at the suppression hearing and disputed some parts of Officer Cortez' testimony. He claimed he was not trying to turn into the repair garage, but was trying to get to a nearby gas station, denied he violated any traffic laws and asserted that he was stopped by multiple officers and pressured by them to consent to have his person and vehicle searched. He testified that he did not voluntarily consent to be patted down by Blosser.

In denying defendant's motion to suppress, the court concluded that "the evidence established defendant's consent to [the pat down] to have been voluntarily given." December 27, 2006, Order, p. 6.[1] It found that the "[t]he officers did not have their weapons drawn, they used a conversational tone in their dealings with defendant, the defendant was in a public place, and only two officers were present." *Id.* The court noted that defendant had testified that at least four officers were present and were pressuring him to consent, but stated that it did not find his testimony to be credible. In its discussion, the court also "note[d] that, in the circumstances existing here, the pat down of defendant was likely justified as an incident of the Terry stop, even absent his consent." *Id.* It found that certain facts, including

---

[1]*The court then proceeded to find that the subsequent searches of defendant's vehicle and the storage unit were valid.*

that "defendant was already the subject of an extensive investigation into possible illegal drug activity, including a controlled buy ... coupled with defendant's actions upon noting the police presence at the garage, the occurrence of the stop in a high crime area with a history of illegal drug activity, and other circumstances, suggest[ed] a limited pat down for weapons was reasonable incident to the Terry stop." *Id.* At 7.[2]

## ANALYSIS

In his motion defendant asserts that his first attorney, whom he had retained, failed to adequately prepare and present his motions to suppress. Defendant contends counsel failed to sufficiently investigate the circumstances surrounding the traffic stop and his arrest, in that he did not obtain a copy of the radio dispatch and did not interview individuals defendant had identified who, he claimed, had witnessed his arrest. He also asserts that his attorney failed to cite pertinent legal authority pertaining to the charged traffic violation. Defendant argues that the attorney who was appointed to represent him after his retained counsel withdrew was ineffective in that he failed to correct the errors of his retained counsel. Defendant also included a claim based on the conduct of his appellate counsel "in order to preserve his right to reply to any procedural-bar defense the government may decide to raise on its response." Defendant's Memorandum, p. 11.

"To prevail on an ineffective-assistance-of-counsel claim, [the defendant] must show

---

[2]*Because the "government relie[d] primarily on defendant's consent, and in light of the court's conclusion that consent to the pat down search was voluntarily given," the court found it unnecessary to address the issue further. December 27, 2006, Order, p. 7.*

that his 'counsel's representation fell below an objective standard of reasonableness,' Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" United States v. Taylor, 454 F.3d 1075, 1079 (10th Cir. 2006) (quoting Strickland, 466 U.S. at 694). The review is highly deferential and the court "'indulge[s] in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Id*. (quoting Strickland, 466 U.S. at 689).

The crux of defendant's argument is that his attorney "had no evidence to contradict the governments evidence." Defendant's Memorandum, p. 9. Specifically, he claims his counsel failed to obtain a copy of the radio dispatch or interview witnesses, whose names he had provided. He also contends his counsel failed to investigate the traffic violations which provided the basis for the traffic stop. The government contends defendant's § 2255 motion should be denied because he waived his right to claim his counsel was ineffective at the suppression phase of the proceedings. The government relies on the appeal waiver in defendant's plea agreement.

It was not clear to the Tenth Circuit whether defendant's appeal waiver "would bar a 28 U.S.C. § 2255 motion challenging the effectiveness of Polly's counsel in regard to the motion[s] to suppress." Polly, 630 F.3d at 1003 n.6. As the plea colloquy shows, it also was not clear to defendant whether he would be precluded by the waiver from asserting his

ineffective assistance of counsel claim. During his plea hearing defendant asked for clarification about the waiver – what he would and would not be able to appeal. Plea Transcript, pp.48-49. Judge Russell responded by asking government counsel: "[W]ould it be the intent of the government in that regard that the defendant would be waiving his right to collaterally challenge competence of counsel, of Mr. Adams?" *Id.* At 49. Neither her answer – "Our initial response would be, yes, that he is blocked. However, there are exceptions and we would abide by the case law"– nor the rest of the discussion about the issue sufficiently clarified the extent of the waiver for this court to conclude defendant voluntarily waived his right to bring, in a collateral proceeding, a claim of ineffective assistance of counsel based on counsel's performance in conjunction with defendant's motions to suppress. *See id.* at pp. 48-51.[3]

As its backup argument, the government asserts that defense counsel was effective.[4] Having considered the merits of defendant's claims, the court concludes defendant has failed to establish the second prong of Strickland – that he was prejudiced by the alleged deficient representation.[5]

---

[3] *In fact, defendant could have understood from the judge's statement that the waiver did not apply to his ineffective assistance claim. Judge Russell advised defendant that "[i]t would be my understanding that generally if an attorney is incompetent and that his [in]competence led to either a guilty plea or a finding of guilty or his [in]competence led to the failure of the suppression motion to be sustained, I would assume that that would – you could raise that." Plea Transcript, p. 51.*

[4] *To a large extent, rather than focusing on the Strickland standard, the government simply reurges its argument that defendant waived his right to challenge his counsel's conduct.*

[5] *Having concluded defendant has not show prejudice, the court does not have to determine whether counsel's conduct was deficient under Strickland. United States v. Orozco, 301 Fed.Appx.*

Defendant claims his counsel (1) failed to obtain a copy of the radio dispatch; (2) failed to contact the witnesses on the list defendant provided; and (3) failed to investigate the alleged traffic violations.[6] He contends the dispatch would have demonstrated that there were more than just two officers at the scene at the time he told the officers he didn't care, when asked if he could be patted down,[7] and that the two man unit was called for before he was arrested. Defendant's supporting evidence consists of an Oklahoma City police department agency incident report, defendant's Memorandum, Exhibit 4.[8] As the codes used on the report are not provided, it is unclear what the document demonstrates. It does not substantiate defendant's assertion that other officers were called and/or on the scene before he was patted down. [9]

---

*783, 784 (10th Cir. 2008) (unpublished).*

[6]*Defendant also asserts in his memorandum that counsel failed to argue that defendant's consent to the search was not voluntary because Blosser retained his driver's license while Cortez questioned him. The rule defendant is relying on – that a detention does not end before the officer returns a driver's documents – is not applicable here.*

[7]*Transcript, suppression hearing, p. 71.*

[8]*Defendant refers to this as the "Radio Dispatch" in his motion to expand record. Doc. #116.*

[9]*Assuming the dispatch demonstrated, as defendant asserts in his memorandum and motion for discovery, that Cortez called for the two man unit in anticipation of an arrest before he pulled up behind Blosser's car, defendant still would not have shown a reasonable likelihood that the motion to suppress would have been granted. Though any such call might have been premature, it would not have been completely unreasonable in light of Cortez' knowledge that Polly had been involved with a prior controlled drug buy, see Polly, 630 F.3d at 999, and was suspected of being involved with the owner of the garage in distributing drugs, and Polly's suspicious behavior – his apparent attempts "to flee upon seeing the police at the garage," id., and to distance his vehicle from that driven by Cortez.*

As for counsel's failure to contact the witnesses whose names defendant had provided, defendant offers no evidence to support his assertion that they would have testified that they had observed numerous officers at the scene pressuring defendant to consent to a pat down. *See* United States v. Scott, 1993 WL 389463, at *2 (10th Cir. 1993) (unpublished). The only affidavit defendant has submitted is his own and the court previously rejected defendant's testimony about the number of officers present when he was arrested as not being credible. December 27, 2006, Order, p. 6, n.3.

Regardless, in light of the court's finding that the pat down would likely be justified as an incident of a Terry stop, for which Polly's consent was not required, it is not probable that evidence that there were more than two officers present when Polly was searched would have changed the outcome of the suppression hearing. *See* United States v. Garcia, 459 F.3d 1059, 1063 (10th Cir.2006) ("During an investigative detention, [p]olice officers are authorized to take reasonable steps necessary to secure their safety and maintain the status quo.") (internal quotations omitted); United States v. Lazos, 314 Fed. Appx. 127, 131 (10th Cir. 2009) (unpublished) (Officer making a traffic stop may order passengers to exit vehicle and "[i]n some circumstances, an officer may go further and conduct a pat-down search for weapons. The purpose of the limited pat-down search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.") (internal citation and quotations omitted).[10] In other words, even if counsel had obtained a copy of the

---

[10]The Tenth Circuit found that Cortez's request that Polly exit his vehicle was permissible, Polly, 630 F.3d at 998, and has repeatedly "held that a connection with drug transactions can

radio dispatch, assuming one could be obtained, and had interviewed the witnesses on the list defendant provided, it is not reasonably probable that the information that defendant claims would have been obtained would have affected the outcome of the suppression hearing.

Defendant's remaining argument is that his attorney failed to investigate the traffic violations. An investigation might have confirmed defendant's assertion that his pickup did not cross a double yellow line on Jordan. However, the traffic violation consisted of defendant crossing the center line, not crossing a double line.[11] Polly, 630 F.3d at 997 ("Polly also claims that he did not commit a traffic violation by crossing the centerline because he was merely making a left turn and then changed his mind and proceeded, which is not, according to Polly, a traffic violation. However, the Oklahoma statute he cites in support of this proposition states only that one can cross the centerline when making a left turn, not that someone can cross the centerline in the process of an aborted left turn and come back over the centerline. 47 Okla. Stat. Ann. §11–301(C)."); December 27, 2006, Order, p. 5; Transcript, suppression hearing, p. 24 (Cortez testified that prior to the pat down he intended to write defendant "two city citations for speeding in a residential area as well as crossing over the center lane line.").

---

*support a reasonable suspicion that a suspect is armed and dangerous." United States v. Garcia, 459 F.3d 1059, 1064 (10th Cir. 2006). Here Cortez was aware that Polly "had already sold drugs to undercover agents as part of a controlled buy," Polly, 630 F.3d at 999, "suspected Polly of involvement in drug distribution with the owner of the garage," id. at 994, and had seen him start to turn into the garage immediately prior to his being pulled over. See United States v. Lazos, 314 Fed. Appx. 127, 131-34 (10th Cir. 2009) (unpublished).*

[11]*In the Crime Report, defendant's Exhibit D, Officer Cortez states that defendant had driven left of the center lane.*

Defendant's argument pertaining to the other traffic violation – for speeding in a residential area – is similarly unpersuasive. Defendant has not demonstrated that it was impossible for him to speed due to the street configuration "without a collision, and numerous other traffic violations occurring." Defendant's memorandum, p. 20. In addition, defendant's appointed counsel stated in his affidavit that he had "investigated the circumstances of the arrest and personally went to the scene of the arrest and drove the route Andrew Polly drove before he was stopped by the police officer." Government's response, Exhibit D, p. 2.

Defendant has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the court would have granted his motion to suppress. He therefore has not established that his initial, retained counsel was ineffective. As defendant's claim against his appointed counsel is predicated on alleged errors committed by his retained counsel, that claim also fails. To the extent defendant's motion is based on the conduct of his appellate counsel, it warrants little discussion. Defendant fails to identify the factual basis for his claim that his appellant attorney's performance was deficient and the court is aware of none. Appellate counsel included ineffective assistance of trial counsel as one of the grounds for appeal, but the Tenth Circuit declined to consider it, concluding the district court should have the first opportunity to consider trial counsels' effectiveness. Habeas relief is not warranted on the basis of the conduct of defendant's appellate counsel.

The court has concluded that, while defendant did not waive his ineffective assistance of counsel claim in his plea agreement, he has failed to satisfy the prejudice prong of

Strickland. He has not shown "that there is a reasonable probability that, 'but for counsel's [failure to obtain a copy of the radio dispatch, interview the witnesses defendant had identified or investigate the charged traffic violations] the result of the [motions to suppress] would have been different.'" Taylor, 454 F.3d at 1079 (quoting Strickland, 466 U.S. at 694). Accordingly, defendant's § 2255 motion is **DENIED**. The court also denies a certificate of appealability as it finds defendant has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Defendant also filed several other motions. His motions to take judicial notice [Doc. #117] and to expand the record [Doc. #116] are **GRANTED**. His motion for discovery [Doc. #124] is **DENIED**, as the "specific allegations before the court [do not] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief.'" United States v. Moya-Breton, 439 Fed.Appx. 711, 715-16 (10th Cir. 2011) (unpublished) (quoting Wallace v. Ward, 191 F.3d 1235, 1245 (10th Cir.1999)), *cert. denied*, 132 S.Ct. 1775 (2012).[12] Defendant's request for an evidentiary hearing, included with his motion for discovery, is **DENIED** because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Finally, having considered "the merits of [defendant's] claims, the nature of the factual issues raised in the claims, [defendant's] ability to present his claims, and the

---

[12]*The motion also is untimely. Defendant filed his § 2255 motion in April 2012, but did not file his motion for discovery until September 2012, after the government had responded to his motion and defendant had filed a reply brief.*

11

complexity of the legal issues raised by the claims," <u>Negron v. Adams</u>, 2000 WL 1152554, at *3 (10th Cir. 2000) (unpublished opinion) (internal quotations omitted), the court concludes appointed counsel is not warranted. Therefore, defendant's motion for appointed counsel is **DENIED**.

**IT IS SO ORDERED**.

Dated this 11th day of December, 2012.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE